**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

_____

**BAP NO. PR 23-026**

_____

**Bankruptcy Case No. 22-02380-ESL**

_____

**LAS MARTAS, INC.,**
**d/b/a Vaqueria Las Martas,**
**Debtor.**

_____

**LAS MARTAS, INC.,**
**Appellant,**

**v.**

**CONDADO 5, LLC, and**
**JOSÉ R. CARRIÓN, Chapter 12 Trustee,**
**Appellees.**

_____

**Appeal from the United States Bankruptcy Court**
**for the District of Puerto Rico**
**(Hon. Enrique S. Lamoutte, United States Bankruptcy Judge)**

_____

**Before**
**Fagone, Panos, and Katz,**
**United States Bankruptcy Appellate Panel Judges.**

_____

**Daniel M. Press, Esq., on brief for Appellant.**
**Gustavo A. Chico-Barris, Esq., and Tomás F. Blanco-Pérez, Esq., on brief for**
**Appellee, Condado 5, LLC.**

_____

**March 5, 2025**

_____

**Fagone, U.S. Bankruptcy Appellate Panel Judge.**

The bankruptcy court granted a motion to dismiss the chapter 12 case of Las Martas, Inc. for cause. In so doing, the court determined that there was "continuing loss to or diminution of the estate" and no "reasonable likelihood of rehabilitation" under 11 U.S.C. § 1208(c)(9). On appeal, the debtor contends that the court applied the wrong legal standard to identify the existence of loss to or diminution of the estate. We agree and therefore **VACATE** the dismissal order and **REMAND** to the bankruptcy court for further proceedings.

## BACKGROUND

The debtor operates a dairy farm on land owned (at least in part) by its principal, Juan Manuel Barreto Ginorio. The debtor's primary assets include cows, equipment, and a milk quota allocated by the Milk Industry Regulatory Office of Puerto Rico. In 2005, Banco Popular de Puerto Rico ("BPPR") loaned $1,850,000 to the debtor and, in connection with that loan, obtained liens on the farmland and on the debtor's milk quota. Barreto Ginorio, among others, guaranteed the debtor's obligations to BPPR. As discussed below, the bankruptcy case underlying this appeal is the debtor's third in an 11-year period. The BPPR secured claim—which was eventually transferred to Condado 5, LLC—featured prominently in each case.

The debtor commenced its first chapter 12 case in 2011. Around that same time, Barreto Ginorio and a related entity, JM Dairy, Inc., also filed petitions under chapter 12. Several years after their joint plan was confirmed, the court dismissed the cases at the urging of the chapter 12 trustee, who alleged that the debtors had materially defaulted on their confirmed plan.

In December 2018, the debtor commenced its second chapter 12 case. Condado promptly moved to prohibit the debtor's use of cash collateral, asserting a lien on the debtor's income from the milk quota. The court denied Condado's motion, ruling that Condado's lien did not extend to

the receivables generated by the post-petition production and sale of milk. In re Vaqueria Las Martas, Inc., 617 B.R. 429, 441 (Bankr. D.P.R. 2020). The court reasoned that Condado's "security agreement does not specify that the dairy cows or the raw milk produced by [d]ebtor's dairy farm operation serve as collateral to the loans. The milk is produced by the cows[,]" not by the milk quota. Id. And, "[s]ince Condado's collateral does not include the cows, it may not claim that its security interest attaches to any identifiable proceeds of the cows." Id. Condado appealed and, while that appeal was pending, the debtor asked the court to order Condado to turn over the milk proceeds it had been receiving since the case began. The court denied that motion due to the pending appeal. Condado then moved to dismiss the case. The court granted that motion and dismissed the case under 11 U.S.C. § 1208(c)(1) and (3) based on unreasonable delay prejudicial to creditors and the debtor's failure to file a confirmable plan in a timely manner. In re Vaqueria Las Martas, Inc., No. 18-07304 (ESL), 2021 WL 8200008, at *7 (Bankr. D.P.R. April 22, 2021). The dismissal was affirmed on appeal. Vaqueria Las Martas, Inc. v. Condado 5, LLC (In re Vaqueria Las Martas, Inc.), 638 B.R. 482, 485 (B.A.P. 1st Cir. 2022).

After the dismissal of the second case, Condado filed financing statements with the Puerto Rico Department of State, asserting a lien on the debtor's accounts receivable from the sale of raw milk. Condado also filed an action seeking to foreclose on the farmland.

On August 16, 2022, the debtor commenced its third chapter 12 case. The next day, Condado moved to prohibit the debtor's use of cash collateral, pointing to the financing statements and asserting that its lien extended to the debtor's post-petition accounts receivable. Condado further sought to collect the proceeds of the debtor's milk production directly from one of the debtor's largest customers, Suiza Dairy. In response, the debtor averred that Condado's financing statements did not create a lien. The debtor urged the court to deny the motion for the

3

same reason that it denied Condado's similar motion in the debtor's second case. In light of the cash collateral dispute, Suiza filed a complaint against the debtor and Condado, asking the court to resolve the competing claims to the accounts receivable.

Two weeks after the petition date, Condado moved to dismiss the case, citing 11 U.S.C. § 1208(c)(1) and (9) and asserting cause for dismissal based on allegations of bad faith. The motion did not contain factual allegations attempting to establish loss to or diminution of the debtor's estate from and after the petition date, namely, August 16, 2022. Instead, Condado asserted that the debtor's situation had not changed since the dismissal of the prior case, during which the debtor's assets had declined in value. In its reply to the debtor's opposition to the motion, Condado further asserted that the debtor's assets had declined in value from the petition date in the second case to the petition date in the third case, that scheduled liabilities had increased during that time frame, and that the debtor's gross revenue had been declining since 2016. As for the post-petition period in the third case, Condado asserted that the debtor's monthly operating report ("MOR") for August 2022 revealed a decline in the debtor's cash on hand. Condado's papers further averred that there was no reasonable likelihood of rehabilitation, considering its ongoing effort to foreclose on the farmland. Condado also addressed bad faith as grounds to dismiss in some detail.

While the motion to dismiss was pending, the debtor timely filed a chapter 12 plan. The court then issued an order setting the plan for hearing. Acting on its own motion, the court also issued an order to show cause why confirmation should not be denied under 11 U.S.C. § 1225(a)(3) and (6) and the case dismissed under 11 U.S.C. § 1208(c)(5). On Condado's motion, and with the debtor's consent, the court converted the scheduled confirmation hearing to

4

a status conference. After that status conference, the court took the motion to prohibit the use of cash collateral under advisement, directed the debtor to file a modified plan, and scheduled an evidentiary hearing on Condado's motion to dismiss in March 2023. On Condado's motion, the hearing was later continued to June 2023.

In the meantime, Suiza received permission to consign the proceeds of post-petition receivables due to the debtor into the court registry. In February 2023, the court denied Condado's request to prohibit the debtor's use of cash collateral, again ruling that Condado's lien on the debtor's milk quota did not attach to the receivables. In re Las Martas, Inc., 650 B.R. 359, 371 (Bankr. D.P.R. 2023). Condado appealed that order to the district court.

After the evidentiary hearing in June 2023, the bankruptcy court took the motion to dismiss and the order to show cause under advisement. The court then issued an order dismissing the case under § 1208(c)(9) due to continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. In re Las Martas, Inc., No. 22-02380 (ESL), 2023 WL 6413170 (Bankr. D.P.R. Sept. 29, 2023). The court did not rule on Condado's request for dismissal based on the debtor's alleged bad faith. See id. at *17. The court also did not rule on its own order to show cause why the case should not be dismissed under § 1208(c)(5). In its analysis, the court described the assets, liabilities, and gross income reported in, and select MORs filed in, the debtor's first, second, and third bankruptcy cases at considerable length. Id. at *8-14. When parsing three MORs in the third case, the court noted a post-petition decline in the number of milking cows, that the debtor had not been paying certain operating expenses, and that the debtor had received a significant grant and used the funds to purchase additional cows. Id. at *11-12. Based on this survey of reporting in all three of the

debtor's cases, the court concluded that the debtor's financial situation had deteriorated since the first and second cases, "not only because there has been a decrease in the assets and an increase in liabilities," but also because the farmland was subject to ongoing foreclosure proceedings. Id. at *16.

Immediately after the case was dismissed, Condado filed a motion to withdraw the funds in the court's registry, which totaled $164,898. The debtor opposed the motion, asking the court to disburse the funds to the debtor. The debtor also sought reconsideration of the dismissal order. After the court denied reconsideration, the debtor brought this appeal.

On November 8, 2023, just before this appeal was filed, and on the eve of trial on Condado's action to foreclose its mortgage on the farmland, Barreto Ginorio filed a chapter 11 petition. See In re Barreto Ginorio, No. 23-03681 (ESL), 2024 WL 739327, at *4 (Bankr. D.P.R. Feb. 22, 2024). Several months later, his case was dismissed for lack of good faith. Id. at *9. The dismissal order has been appealed to the district court, and that appeal remains pending. In its appellate brief filed in May 2024, Condado reported that foreclosure was "imminent." However, at oral argument about four months later, the debtor reported that foreclosure had not occurred.

During the pendency of this appeal, the district court stayed Condado's appeal of the order denying its request to prohibit the debtor's use of cash collateral. And the bankruptcy court declined to exercise jurisdiction over Condado's motion to withdraw the consigned funds given the pendency of this appeal and Condado's now-stayed appeal to district court. As a result, a sizeable amount of money remains unavailable to the debtor and its creditors (including, of course, Condado).

6

## SCOPE AND STANDARD OF REVIEW

The scope of our review is informed by (a) what the bankruptcy court found and concluded and (b) the arguments made by the parties on appeal. The debtor's notice of appeal and its appellate brief purportedly challenge both the dismissal order and the order denying reconsideration. However, the debtor's brief is devoid of any argumentation challenging the order denying reconsideration. Instead, that brief is devoted to a single issue: whether the bankruptcy court erred in dismissing the case under § 1208(c)(9). For this reason (and because we vacate the dismissal order) we do not separately consider the propriety of the order denying reconsideration.

For its part, Condado urges us to affirm the dismissal on alternative grounds, namely unreasonable delay prejudicial to creditors under § 1208(c)(1) and the debtor's alleged lack of good faith. Both of these alternative grounds are fact-bound questions. See In re Vaqueria Las Martas, Inc., 638 B.R. at 496 (enumerating factors courts consider in assessing whether delay is unreasonable); Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 210 (B.A.P. 1st Cir. 2005) (reviewing for clear error the dismissal of a chapter 13 case for lack of good faith based on totality of the circumstances). Because the bankruptcy court did not rule on either of these fact-intensive issues, we decline Condado's invitation to wrestle with them on appeal. Cf. Pullman-Standard v. Swint, 456 U.S. 273, 291 (1982) (reversing a court of appeals decision that improperly undertook an independent evaluation of the totality of the circumstances regarding the factual question of intent to discriminate).

The findings of fact made by the bankruptcy court are not challenged on appeal. Instead, the debtor insists that the court misapprehended the temporal limits of the inquiry under

§ 1208(c)(9) and consequently erred in concluding that there was cause to dismiss. That is a question we review de novo. See Sherman v. Sec. & Exch. Comm'n (In re Sherman), 491 F.3d 948, 969 (9th Cir. 2007) (reviewing de novo "whether a *type* of misconduct" amounts to "cause" for dismissal under § 707(a)).

## APPELLATE JURISDICTION

An "order dismissing a chapter 12 case is a final, appealable order." In re Vaqueria Las Martas, 638 B.R. at 494. Accordingly, we have statutory jurisdiction over this appeal. See 28 U.S.C. § 158(a)-(c). There is no question that the debtor was aggrieved by the dismissal of its chapter 12 case. Thus, standing is not an issue. Likewise, mootness is not a concern given the relief sought by the debtor (i.e., reversal of the dismissal order).

## DISCUSSION

Loss or diminution is a concept that has factored into the ongoing viability of non-liquidating bankruptcy cases for a long time. Related phrasing in our nation's bankruptcy laws dates back to at least 1938, with the enactment of the Chandler Act (Act of June 22, 1938, ch. 575, 52 Stat. 840). For example, in its addition of Chapter XI to the Bankruptcy Act of 1898, the Chandler Act included the possibility that a debtor with a plan for addressing its unsecured debt could—while being permitted to retain possession of estate property—be ordered "to file a bond or undertaking . . . to indemnify the estate against subsequent loss thereto or diminution thereof . . . ." 11 U.S.C. § 726 (1940) (corresponding to Chapter XI's § 326); see also 11 U.S.C. §§ 1(23), 22(a), 701, 706-707, 722-723 (1940). Like innumerable other concepts in the law, the "loss" or "diminution" sufficient to prompt an indemnification requirement was open to interpretation. Asa S. Herzog, Indemnification in Chapter XI Proceedings, 32 J. Nat'l Ass'n Ref. Bankr., Apr. 1958, at 52 (disagreeing with unsupported view in Collier on Bankruptcy (14th ed.)

8

that almost any projected loss or diminution necessitated an indemnity order under Chapter XI's § 326, and explaining how disregard for discretion inherent in § 326's use of "may . . . order" would senselessly doom most cases and defeat Chapter XI's rehabilitative purpose).

Decades later, a major overhaul of bankruptcy laws in 1978 led to a recasting of this concept in the Bankruptcy Code.  For voluntary reorganization cases under the Code's newly developed chapter 11, the indemnification mechanism no longer existed, and the loss-or-diminution concept was instead incorporated into a factor that could prompt dismissal or conversion to a liquidation case.  Specifically, "continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation"—when found together—amounted to cause for dismissal or for conversion.  11 U.S.C. § 1112(b)(1) (Supp. II 1977-1979).  As before, "loss" and "diminution" were terms not specifically defined in the statute.  When chapter 12 was added to the Code in 1986, "continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation" was imported verbatim from chapter 11 as a cause that could prompt the dismissal of a chapter 12 case.  11 U.S.C. § 1208(c)(9) (Supp. IV 1983-1987).[1]

The contours of the concept of "loss to or diminution of the estate" may be debatable in a different context.  However, the relevant time frame for measuring loss or diminution is less elusive.  Because this appeal squarely presents that temporal question, we begin (and end) our analysis there.  The debtor contends that the bankruptcy court committed reversible error by comparing the condition of the estates in the first and second cases with the condition of the

---

[1] In 2005, § 1112(b) was replaced, and in that process, "substantial or" was added before "continuing loss to or diminution of the estate[.]"  Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 442(a), 119 Stat. 23, 115-16 (amending and relocating prior § 1112(b)(1)'s combined factors to their current position in 11 U.S.C. § 1112(b)(4)(A)).  Section 1208(c)(9) was not then and has not been similarly amended.

estate in the third case when testing for loss or diminution under § 1208(c)(9). Condado insists that the court appropriately employed a holistic, retrospective lens when applying that particular statute. We agree with the debtor.

When assaying loss or diminution under § 1208(c)(9), the relevant facts and circumstances are those existing after the petition date. This is so for two reasons. First, the statute refers to an estate, a singular estate. Cf. In re McCormick, No. 06-80976, 2007 WL 1792509, at *2 (Bankr. M.D.N.C. June 18, 2007) (employing similar analysis when construing 11 U.S.C. § 503(b)(1)(A) and concluding that an administrative expense claim for "preserving the estate" must arise out of a post-petition transaction). Second, the estate is a basket of interests in property that springs into existence upon the filing of the petition. See 11 U.S.C. § 541(a). Simply put, the estate does not exist before the petition date, and this is true even when there have been serial filings by a debtor. In addition to these textual clues, an oft-cited treatise on bankruptcy supports the idea that loss to or diminution of the estate is a measurement taken during the post-petition period. See 7 Collier on Bankruptcy ¶ 1112.04[6][a] (16th ed. 2024) (suggesting that § 1112(b)(4)(A), the chapter 11 counterpart to § 1208(c)(9), "tests whether, *after the commencement of the case*, the debtor has suffered or continued to experience a negative cash flow, or, alternatively, declining asset values") (emphasis added).[2]

---

[2] We observe that the test for loss or diminution articulated by Collier and recited by some courts may not fully capture the necessary inquiry. See Andover Covered Bridge, LLC v. Harrington (In re Andover Covered Bridge, LLC), 553 B.R. 162, 174 (B.A.P. 1st Cir. 2016) (endorsing the test for loss or diminution set forth in Collier). An estate with negative cash flow may—or may not—be experiencing a loss or diminution. Much more could be said on this topic, but we refrain, given our determination regarding the relevant period for consideration.

Although the bankruptcy court's exposition of the law appropriately targeted the post-petition time frame, its analysis was predominantly retrospective. In focusing on the first and second cases, the court neglected to account for the post-petition payments into the court's registry in the third case, or to make a meaningful evaluation of all of the assets and liabilities of the estate in the third case. The heart of the court's analysis consisted of a comparison of the financial condition of the estate in this case with the financial condition of the debtor in its prior cases. See In re Las Martas, Inc., 2023 WL 6413170, at *12-13. In particular, the court found that although the number of the debtor's milking cows and its utilization of the milk quota had increased from the second case to the third case, these figures remained well below the standards set in the first case. Id. at *12-13. The court found that the debtor's personal property had consistently declined in value from one case to the next, while its liabilities had consistently grown. Id. at *14. After parsing the schedules and select MORs spanning the debtor's three separate cases, the court concluded as follows:

> The estate has continued to diminish for the past four (4) years and nine (9) months and there is no hope of rehabilitation. The Debtors have consistently demonstrated for the past eleven years (in bankruptcy) that they do not have a viable farming operation sufficient to pay expenses and fund a plan and the value of the estate continues to diminish with the passage of time (VLM personal assets) and its liabilities continue to increase.

Id. at *16. At the time the court's decision was rendered, the estate (in this case) had only been in existence for about one year and therefore could not have been diminishing for close to five years. Using a similar rationale, the bankruptcy court found that "[i]n the instant case, the [d]ebtor has filed three (3) bankruptcy petitions." Id. at *12. True, the debtor had prior cases, and an estate was created in each case. But that, by itself, is not a sufficient reason to aggregate

11

three separate estates into a single estate and then apply § 1208(c)(9) to the fictional combined estate. By utilizing the debtor's financial condition in its prior bankruptcy cases as the benchmark against which it measured the condition of the estate in this case, the court erred in applying the pertinent legal standard. We are persuaded that, in determining whether there was loss to or diminution of the estate, the court should have compared the size of the estate at some point after the petition date with the size of the estate at some later point after the petition date.[3]

To be sure, the bankruptcy court did make some findings about the condition of the estate in the post-petition period. In particular, the court found certain assets had decreased between the petition date and June 2023—i.e., the number of milking cows. The court noted that the debtor's monthly net income had increased during that same time period, and there was evidence that cash (including receipt of grant funds) had increased. After reviewing select post-petition MORs, the court also observed that the debtor had not been making utility payments or payments on the farm lease to Barreto Ginorio. As noted, however, these specific findings related to the post-petition period were mixed together with financial information derived from the debtor's prior cases that was irrelevant to the loss or diminution inquiry under § 1208(c)(9). Even if we were to disregard the findings related to the prior cases, and to view the findings related to the post-petition period in isolation, those pertinent findings would not be sufficient to support a determination that the estate in this case was diminishing for purposes of § 1208(c)(9). Moreover, there is other evidence in the record tending to support the contrary view—i.e., that the estate was enhanced post-petition. This evidence (which the bankruptcy court did not

_____

[3] We do not, by this decision, specify the relevant measuring dates when testing for loss. Instead, our decision should be understood as specifying only that both dates must fall after the petition date.

12

emphasize) includes the sizeable amount of money parked in the court's registry, ostensibly unencumbered property of the estate.

Because § 1208(c)(9) is phrased in the conjunctive and the court's order expressly granted Condado's motion to dismiss based on that provision, we conclude here.  Our determination of this narrow issue does not reach the court's assessment of the second prong of § 1208(c)(9) or any other basis for dismissal.

## **CONCLUSION**

Based on the above analysis, we **VACATE** the Dismissal Order and **REMAND** for further proceedings consistent with this opinion.